PALMER and POPE *v.* PALMER et al.

[In Chancery.]

*Mortgage.*

A owed B, and also the orators. Orators applied to A for security on his farm, and inquired of B, who knew about A's affairs, whether the farm was incumbered, and he said no, except by mortgage to H. At the same time B had an unrecorded mortgage of the farm, of which orators had no notice, but they knew A owed B. B offered to take a joint mortgage with orators, which they refused. Orators and B went to the town clerk's office together, and inquired about incumbrances on the farm, and B, seeing orators were about to get a mortgage, left his for record, after which, on the same day, orators gave their mortgage to B to leave for record, but B did not then tell them of his mortgage. Orators did not prove that they were damnified by B's not telling them of his mortgage when they handed him theirs. *Held,* that B's mortgage had priority.

APPEAL from the Court of Chancery.

The bill alleged that on January 2, 1873, defendant Abial C. Palmer was indebted to orators in $4,274 on account of liability incurred by them upon a constable's bond they had signed for him to the town of Danville, he being a defaulter to that amount; that on said day said Abial proposed to mortgage his farm to them, to secure said liability, and assured them that it was free from incumbrance; that orators applied to defendant William B.

Palmer, Abial's brother, who was well acquainted with Abial's pecuniary circumstances, to know if the farm was incumbered, and that he assured them it was not, except by mortgage to one Harris, and urged them to take a mortgage thereof to secure them ; that William B. went with orators to the town clerk's office, and they together inquired of the town clerk, and were told that there was no mortgage except the Harris mortgage ; that afterwards, on the same day, Abial gave orators a note for the above sum, and secured the same by mortgage on said farm, and that they left the mortgage for record at 3 o'clock, P. M., on the same day ; that after said conversation with William B., and after they were at the town clerk's office together, and on said 2d of January, William B. left for record a mortgage of said farm from Abial to himself, dated December 30, 1872, securing a note for $1500 ; that said William B. fraudulently concealed the fact of his mortgage, intending thereby to obtain a fraudulent priority over the orators, and now claims that his mortgage is prior ; that the orators, having no knowledge of William B's mortgage, waited a year, when they might and would have obtained other security had they not supposed their mortgage to be good. *Prayer* for foreclosure, and that William B's mortgage be postponed to orators' mortgage.

The bill was taken as confessed as to Abial C. William B. answered, admitting orators' liability, but alleging that the defalcation was only about $2500 ; alleging that orators were negotiating several days with Abial C. for security, and that on January 2d orators inquired of him whether said farm was incumbered except by the Harris mortgage, and that he told them it was not, but that Abial C. owed him about $1500, and proposed to orators to take a joint mortgage with them, which they refused ; that he took his mortgage on December 30, but did not have it recorded, as he was willing to place himself on an equality with orators ; that on January 2d, being satisfied orators intended to get security over him, he left his mortgage for record, after which, on the same day, he again proposed to orators to take a joint mortgage with them, which they refused, whereupon he determined to assert the priority of his mortgage. Answer traversed, and testimony taken.

The court, at the June Term, 1874, Ross, Chancellor, decided that William B's mortgage be postponed and made subsequent to orators' mortgage, and entered a decree for orators against both defendants. Appeal by William B.

*C. H. Davis* (*Belden & Ide* with him), for orators.

*B. N. Davis*, for defendants.

The opinion of the court was delivered by

BARRETT, J. As against Abial C., William B. holds a valid and equitable mortgage to secure a *bona-fide* debt. He holds the same against the orators, unless they are entitled to precede him by reason of an equitable right as against him.

So far as consideration, grant, and record are concerned, William B. is prior in legal right. The orators must therefore establish the ground of equity upon which they claim to stand in advance of William B. That ground is, that they will suffer damage by reason of the wrongful conduct towards them by William B., if he is allowed to stand on the legal effect of his mortgage.

It is conceded that he had a right to take the mortgage and leave it for record as he did; but it is claimed that he ought to have told orators of the fact at the time their mortgage was presented to him with the request that he would carry it to the town clerk's office, and that by reason of his not doing so, they have lost means and opportunity to get indemnity and pay on their debt against Abial C.

That debt had already accrued and was existing. It had not been induced by any thing that had taken place, represented, or held out, in respect to a mortgage by William B. or Abial C.

In this respect the orators and William B. stood on the same footing. His debt had already accrued and was existing, without regard to Abial C.'s liability to the orators, or to any thing that took place between the parties as to the mortgages in question. Standing thus on equal footing with the orators in respect to debt against Abial C., and having equal right with them to have security by mortgage, was William B. at the time he di-

rected his mortgage to be recorded, under obligation to let the orators' mortgage go on record before his ?　It is plain to us from the evidence that he had been openly and frankly endeavoring with the orators to have equal security with them by way of mortgage from Abial C. down to the time when the orators caused the mortgage to be made to them alone.　William B. had done nothing to lead orators to suppose that he had abandoned his wish and purpose to share in the security which Abial might be able to make by way of mortgage, and when the mortgage to orators was handed to William B. to leave at the town clerk's office, it is difficult for us to see how or why the orators, from anything that had passed between the parties, should have supposed that he would yield the precedence to them.　When they refused to give him equality with them as he had proposed and urged down to the last moment, it would seem to be a strong draft on his good nature, that they should require him to let them have the lead when he had as good a right to lead them as they to lead him.

The value of the real estate subject to and embraced in the mortgages is no element in this case, for the orators were conversant with it, and had their own knowledge and judgment as the ground of their action.　Indeed, it is not claimed that they were misled in this respect.

In another respect we are not able to find established by the evidence an essential element of the right claimed as against William B.— viz: that the orators have suffered loss attributable to the not telling them by William B. of his mortgage at the time theirs was handed to him.　It is left conjectural whether they would or could have taken any effectual steps to get indemnity or means of satisfaction upon their debt if they had thus been told of William B's mortgage.　His mortgage is to be assumed as valid and effectual with reference to this element of the orators' ground of equitable right, and that whatever means could be available to the orators, was property outside of the mortgage, which they could and would have fastened upon if they had been told of the mortgage of William B. at the time theirs was handed to him. As the burden is on the orators of establishing this ground, it is sufficient to say that the evidence comes short of so doing.

It is needless for any useful purpose, to set forth an analysis and discussion of the evidence—we merely indicate results as to the material points necessary to be established by the orators.

Decree is reversed as to William B., and cause remanded, with mandate that the bill be dismissed as to him, with costs, and that a decree of foreclosure be properly perfected against the other defendant.